This case is being heard via Zoom because of the COVID crisis. My name is Justice Nathaniel House, and presiding on this case with me are Justices David Ellis and Cynthia Cobb. Who are the attorneys who are going to make presentations for the parties? Please state your name and the party you represent, beginning with the appellant. Good morning, Justices. My name is Brendan Appell, and I will be making the argument on behalf of the plaintiff's appellant. Good morning, Your Honor. Your Honor, it's Kurt Aspruth on behalf of the Village of Glenview. Great. Thank you. Because this is being held by Zoom, we've adopted special rules to accommodate it. And the way we're going to proceed is that we're going to allow each party to have an uninterrupted 10-minute time to present their arguments. And that time will be followed by questions by the Justices. We can be a little flexible with the time today because we only have one case that's up today. And after that, the appellant will have a short period of time in which to ask to present rebuttal, and we may be able to ask some questions of the parties if we have any. Does anyone have any questions about the procedure that we're going to follow today? No, Your Honor. No, Your Honor. Okay. All right. With that, we can begin. Mr. Appell, you may proceed when you're ready. Thank you very much, Your Honor. Good morning. My name is Brendan Appell. May it please the Court, counsel for the defendants. I, along with my co-counsel, Selwyn Skevin, represent plaintiffs in this matter and will be reserving some time for rebuttal. For all the complexities in any given case, this case boils down to one disturbing proposition that is being proffered by the defendants. If the village's position is correct and a 90-day statute of limitations applies to a village's jurisdiction to enact a zoning ordinance, what is there, then, to stop a village from holding a secret meeting without notice, passing a zoning ordinance, and then 91 days later or more, springing it on a public that can now no longer do anything to challenge it? The village never even attempts to answer this question in any brief that is ever filed in this case because there's simply no answer. But that is exactly what the result of a decision upholding the circuit court would mean. Luckily for us, Illinois public policy, along with the statutes and case law involved, compel a different result, one which allows a challenge to a village's lack of jurisdiction to enact a zoning ordinance at any time when a village has failed to properly publish notice. Now, before I dive into my main argument, I would like to address the Court's concern as expressed in its August 17th order. The question raised by this Court has the potential to end this appeal for now in the plaintiff's favor in this way. If Ordinance 2856, notwithstanding its other infirmities, was written such that the rezoning decision has not yet been made final until after the Board of Trustees has accepted an application for rezoning given by the title holder after five years, then we have a situation where the decision that the village said is subject to the statute of limitations has not actually yet been made. And such a holding would nullify the circuit court's dismissal of the complaint as being time-barred, and the matter could then proceed in the lower court on plaintiff's motion for summary judgment as to whether the ordinance is void for lack of publication. So the village claims that it properly accepted the application from GW Properties to rezone the property on May 24th, 2019. And we initially pled that date as well in our complaint. But those allegations were pled on information and belief because that is the date the village claimed it was using. And before the village's supplemental filing in this case, we had never actually seen the application despite our two FOIA requests and later discovery in the case. How do we know now that the May 24th submission was not the application for rezoning called for in Ordinance 2856? There are two reasons that the property has not actually yet been rezoned. One, there must be a notice in an application given by the title holder to the Board of Trustees. So notice in application, what kind of notice? To whom does the notice have to be given? The ordinance doesn't say. It's rather ambiguous. What kind of an application? Well, later in Section 2, the ordinance does say that in no event shall said application for rezoning. So we know that the application has to be one for rezoning. Now, was there notice in this case? Well, Glenby treated the May 24th rezoning and official map amendment application it received from GW as the notice in application in the ordinance, saying so on page 4 of its supplemental brief. But nothing on that application provides anyone other than the village any notice. And there is no evidence presented of notice to anyone other than to the village. So it's unclear whether the ambiguous notice provision is satisfied. Was there an application for rezoning? Yes, the May 24th application. But was the application given by the title holder? No. Looking at the public record, we know that on May 24th, 2019, the property's title holder was the Florence S. Hart 1992 Trust. And looking at the rezoning application, the village received on May 24th, we see that the property owner was listed as Hart 1992 Trust, but most importantly, it was completely missing any signature by the property owner. Therefore, the application was not given by the title holder and is thus defective. On January 21st, 2020, the trust that owned the property deeded it to 2660 Fingston Property LLC, who is an unknown party at this point and whose name does not appear on any application. Now, not only must there be an application by the title holder, it must then be given to the Board of Trustees. Here the village admits in their supplemental brief on pages 3 and 4 that the village accepted the application from GW and that the village board was only notified. Also, we know from the public record that the board did not meet on May 24th, 2019. So, GW could not possibly have given the application to the Board of Trustees at that time. Doing so would have been an Open Meetings Act violation. So, to sum up the first point, the application was not given by the title holder and it was not given to the Board of Trustees. Now, the second reason the property has not yet been rezoned is that the application for rezoning must be accepted by the Board of Trustees. The question is when, if ever, did the Board of Trustees accept the defective application? We know from the village's brief that the board did not receive the application on May 24th and it was only notified on June 7th, 2019. So, when would be the earliest possible date on which we could say the village board accepted the defective application? As the defendants tell us in their brief, the village board subsequently approved Ordinance 6325 on January 7th, 2020, granting final site plan and preliminary subdivision approval for the development of a heart property based on an R4 and B1 rezoning. This date is still before the date the deed was given to 2660 Pinkston Property, but it is the earliest date on which we can say the Board of Trustees could have accepted the defective application because that January 7th date is the very first date that the Board of Trustees took any action whatsoever regarding the heart property since 1988. It was their very first opportunity to accept the application for rezoning. But did the Board of Trustees actually accept an application for rezoning on January 7th, 2020? Actually, no. Nowhere in Ordinance 6325 does the village board accept an application for rezoning. Instead, it just presumes the change has already been made. Thus, it appears that the final decision to rezone the property from R1 over to R4 and B1 has actually not yet been made. This means the plaintiff's complaint was, if anything, early and not late. The court could hold that the village has yet to properly complete the rezoning decision when it started in 1988 and reverse and remand the matter back to the circuit court for consideration of the plaintiff's pending motion for summary judgment as to whether the underlying Ordinance 2856 is void ad obitio. Which brings me back to my primary argument, that the plaintiff's challenge to the village's lack of jurisdiction in 1988 due to improper notice is not barred by a 90-day statute of limitations. 65 ILCS 5-11-13-14, which I'll call Section 14 from now on, requires a publication of notice prior to a required hearing on any amendment to a zoning ordinance. There is no statute of limitations on challenges to a village's failure to follow Section 14's notice requirements in that section, nor should we expect to actually see one there. Because the case law is also clear that notice is mandatory and jurisdictional, as set forth in Village of Riverwoods v. Lake County. In Riverwoods, the county board attempted to rezone a property that was not actually included in the publication notice. The court found that notice was, quote, essential to the exercise of jurisdiction, end quote, and that a majority of states have so found. And that because the county had failed to properly publish notice about the property for which it sought to amend the zoning, the amendment was void. Not just a bad idea. Not just violative of some set of zoning factors. No, it said without proper publication, everything you as a county did was void. A nullity, as if it never went through the motions. We have the same story over in Kirk v. Village of Hillcrest. There the published notice said that the village was going to amend zoning on lots located in subdivision 6. But the final ordinance amended lots in subdivision 5. In as much as no notice of hearing was ever published, the court wrote, regarding subdivision 5, neither the zoning board of appeals nor the village had jurisdiction to proceed with hearings, recommendations, or ordinance amendments. So in sum, section 14 contains no statute of limitation, and the common law is clear that notice is essential for a village to obtain jurisdiction to enact a zoning ordinance. Now the village of Glenview is going to cite section 25A and want to expand that statute of limitations found there to all of 65 ILCS 511.13. But a plain reading of section 25 makes it perfectly clear that subsection A only applies to an action seeking judicial review of a decision. Plaintiffs here are not challenging whether Glenview made a good or a bad decision with regard to ordinance 2856. They're not challenging the LaSalle factors. What they are challenging is the village's right to have enacted any kind of zoning amendment for the heart property in 1988. If the legislature wanted to set a statute of limitation on challenges to jurisdiction, it certainly knew how to do so, because in section 7146 of the municipal code, it does exactly that for challenges to annexations, specifically setting forth that the statute of limitations would apply, quote, even where the judge, body, or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter, and irrespective of whether such annexation may otherwise be defective or void. Here the legislature is acknowledging that the common law voids any action taken by a body without subject matter jurisdiction, regardless of the amount of time that has passed, and then it goes back and specifically exempts from the common law matters of annexation. If the legislature intended to do likewise with challenges to zoning ordinance jurisdiction, it would have expressly done so. That it did not is conclusive. Given the common law that notice is mandatory and jurisdictional, and given the careful crafting by the legislature to limit the statute of limitations to, quote, unquote, decisions, there is only one conclusion that interprets section 51113 as it is written, that the statute of limitations in section 25A does not apply to jurisdictional challenges. Two minutes. Two minutes. Thank you. The defendant's interpretation would allow the village to withhold notice, hold an essentially secret meeting, make a zoning amendment, and allow, 91 days later, spring it on the public who could do nothing about it. That is not a scenario where notice is jurisdictional and mandatory. That is a scenario where notice in the due process it protects is nothing more than unenforceable lip service. Since we're discussing zoning, let me conclude by illustrating the issue in this way. When a village complies with all the publication and notice requirements, thereby satisfying procedural due process, I should say, that creates a foundation of stone that the village can then use to build whatever it wants. If someone doesn't like what the village built on that foundation of stone, let's say the village allowed a four-car garage where only a three-car garage would normally be allowed, then he or she has 90 days to challenge it. If, however, a village does not comply with the notice and publication requirements, thereby violating the due process rights of nearby landowners, while also failing to acquire jurisdiction to enact the zoning amendment, then the village has built its foundation on sand. And if the first storm that comes by hits the house and washes away that sand foundation, everything that the village built on top of it falls. We ask this court to reverse the dismissal of the plaintiff's complaint, remand the case back to the trial court for further proceedings, and I thank you very much, Your Honors. Justice Ellis, do you have any questions? I do, Justice House. Thank you very much. Mr. Rappel, thank you for your presentation, and good morning to you. Good morning. A couple of housekeeping questions first. So we saw for the first time this document that's titled Rezoning an Official Map Amendment Application. We saw that for the first time in a supplemental brief. It's obviously not something you pleaded, and it's not something that we saw below in a motion to dismiss under 2619. First of all, am I right about those two things? You are absolutely correct, Judge, and that is also the first time that we saw it. Okay. So we're outside the record, and I'm not criticizing the village. We asked for a supplemental briefing. I'm actually happy to see this, to at least have it. I see that it's stamped. My understanding from the Glenview Municipal Code is that when these rezoning applications, applications for amendments are filed, they're filed with the Director of Community Development. And I see a stamp here that says Received, and it says Village of Glenview, Illinois Development. Do you know whether this was filed with the Director of Community Development? We do not actually know that to be a fact or not, Judge. Can we judicially notice this document? I believe so. I believe you can, Judge, because it is a governmental record. It is stamped Received. We have no reason to believe that there is any reason to doubt the authenticity of the document at this time. So I do believe we wouldn't have an objection to a judicial notice of the document. Okay. Thank you. Do you know if and when the zoning map was changed? Our understanding is that the zoning map, according to the testimony given by an employee of the Village of Glenview, the zoning map is changed every March. And so the zoning map would have, although I have not independently verified this, been changed in March of 2020 to reflect the zoning change that the Village believes it enacted or made effective, I should say, in May of 2019. Okay. One of the points you make about this application for rezoning is that it was not signed by the property owner. There is a letter that follows it in this supplemental pleading where it appears that a letter has been written to the planning division manager from the people who I guess are the current owners, Daniel Hart and Pamela Metcalf, which says that they are giving their permission to GW Property Group to submit this document. What do you make of that document and can we judicially notice that document as part of this application? What we make of that document, actually I'm glad you asked about that Justice Ellis, is that it does not conform with the requirements of the power of attorney for property, which we believe would be necessary for a party to grant power for another party to act on their behalf as it relates to property. It doesn't comply for many reasons, but the two big ones are that it must be witnessed by a person, and specifically there are a lot of limitations as to who the witness could be, but it cannot be a sibling. These two people we believe are siblings, so they could not witness each other. And second, it must be notarized. And then it must name the agent who should then sign this power of attorney as attorney in fact, which did not actually happen in this case. So we know that the parties didn't treat it as a power of attorney. It doesn't comply with the Power of Attorney Act. And as to whether or not it can be judicially noticed, it's there. I don't, it's part of, or I can't say it's part of the record at this point.  We don't have any objection to it being considered by the court because we think it's clearly defective as a means by which to allow the developer to submit the application properly to the village. So having practiced a lot in property law myself and having been an agent of hundreds, if not thousands, of powers of attorney at this point, that signature of property owner would have said, you know, whoever the co-trustees are would have been Pamela Metcalf and Daniel Hart Bye and then Mr., oh, I forget the gentleman's name, Mr. Galtz would have signed it, you know, as attorney in fact. There's one other wrinkle that is a problem with this document that we don't know at this point. And that is many trust documents don't allow the trustee to delegate signature authority to another party. And we don't know that that is the case or not the case because we do not have the underlying 1992 Hart Trust. But if the Hart Trust doesn't allow delegation of signature authority, then that's another issue as well. But bottom line is that the ordinance itself says it must come from the property owner. All they had to do was obtain signatures from the property owner. If they didn't do that, they'd fail to comply. So I hope I've answered your question. You have. Thank you. Is it proper for an ordinance to give preapproval of zoning, conditional zoning? I know the word conditional zoning is kind of a loaded phrase. However you want to say it, is it proper for an ordinance to say to the landowner, you can rezone and this is exactly how. Take as long as you want. You can do it in 30 years, you can do it in 100 years. And the moment you say go, we will rezone. We don't believe so. That's actually the point of count two. Part of the point of count two of our complaint is that this is illegal contract zoning with those conditions that you expressed. There is a case that we cite in our briefs. And if I can get my fingertips on it, I can recite it for you. I apologize. Don't worry about that. Yeah. So it was Andres versus Village of Flossmoor. So there, you know, the contract zoning is also a method by which an ordinance can be void as well. And in that case, you know, there were special conditions given to an ordinance or zoning amendment that had to be complied with. We're not part of the general zoning ordinance for the particular classification. And here we have that. If you look through the ordinance as well, there's special consideration given, water and other things further on into the ordinance itself. But as to your question, Your Honor, there is no provision in general zoning law that says you can have a zoning change that will take place, in this case, 31 years later. That is a special condition that is essentially contract zoning. And that's part of the problem with this ordinance. Not to mention that they didn't notify anybody of that in the map. So if you were looking at a house in this area and you consulted the zoning maps, which are supposed to be updated each year, there was no indication whatsoever that there was any potential change in the works for that particular property at any time since 1988 up and through 2020. Is there anything per se wrong with giving a landowner a preapproval of zoning and putting it in the hands of the landowner to decide when to pull the trigger, so to speak? I believe so, because there's nothing that I've seen in standard zoning law in Glenview or elsewhere, for that matter, that allows that to happen as a routine matter. So once you start deviating from standard zoning ordinance and zoning law, you start to wander dangerously into the minefield of contract zoning, because you're making special assumptions for people. But counsel, how do we know we're straying beyond the standard? I mean, you can put conditions in zoning, right? You could say you have the right to build a sanitary ditch. We're going to rezone this so you can build a sanitary ditch, but condition down approval from the United States EPA. Would that be an example of a permissible conditional zoning, or am I not making sense? No, I think that in that example, yes, that would be a permissible condition, because it obviously requires additional approval from another governmental body. But the problem would be is if you said you could condition that you could rezone this, we rezone this property for you to build this ditch, and you could do it any time that you feel like it after five years. And if you want to come back and complete this, then we'll do it at that time. But yet we won't comply with any of the notice provisions that are now required later on when this happens, and we won't tell anybody that this is actually going on, because we never publish notice in the newspaper to tell people that the instant issue is happening. That's the other problem, is that 31 years later, there's no – the village is acting as if there's no new notice requirements. They don't have to go out and tell people that this is being rezoned today, because they did it, they claim, back in 1988. Of course, that notice was defective, but that's – I understand Your Honor's question, and it's a murky area, the contract zoning area, as to what does and doesn't constitute contract zoning. But the best I was able to distill it down from my research was that once you start deviating from what applies to everybody in a particular zoning area and start carving out exceptions for particular people, and it starts to look like a contract, now you've crossed the line into contract zoning. So we're reviewing this municipal code provision, right, the limitations provision in section – I think it's 1113.25a? Yes. It talks about a decision to rezone. So Glenview says that the decision was made in 1988, even if there was a condition put on it, which was that the landowner didn't have to do it right away. Are you aware of any case law – first of all, more generally, of any case law dealing with the application of this limitations provision when you have a conditional zoning? I have not seen any case law dealing with that provision, also dealing with conditional zoning. So no, I don't have that information. Is there any particular public policy reason why the village couldn't have the position that they have here, which is that – we may not have said what was going to happen with the property in 1988, but we did tell you in 1988 we are willing to rezone this. We're willing to rezone it as primarily commercial, B1, with a little bit of a buffer of R4, which I think is multi-family housing, whatever it is. We told you in 1988. You had your chance then to challenge us if you didn't like it. We may not have known exactly what company was going to come in and try to redevelop this, but you did know back then that we were going to allow this. What public policy reason would militate against them being able to take that position? Well, number one is that they actually didn't provide the notice that would have led to the situation that Your Honor is talking about, where you could say to somebody who's challenging this, you knew about this in 1988. And the fact of the matter is that by them failing to actually publish notice, nobody knew, or not everybody who was supposed to know knew. And so the people who could have challenged it back in 1988 didn't have notice that it was actually happening. The second thing is that the contract zoning could still be an issue at that point in that you still have that challenge available to you, even if there was proper notice. But if there was proper notice back in 1988, which obviously is the crux of this case, but let's just presume for sake of argument, we had proper notice in 1988. They did publish where they were supposed to, when they were supposed to, all the jurisdiction was there, and this isn't a contract zoning case. Let's just presume that for jurisdictional purposes. Then, yes, we would agree at this point, it might be too late to challenge. If there was a zoning decision in 1988, that comes back to whether or not we actually have a final zoning decision in 2020, or maybe not even yet. But putting everything, sort of doing a lot of assuming arguendo here, but assuming they published, assuming that it was a decision in 1988, assuming that there isn't contract zoning, and that's a lot of assumptions. Then, yes, I think if they had the other problem if they didn't publish on the maps. If they had put an asterisk on the map and said, this is subject to Ordinance 2856, then you're giving people at least constructive notice that if I look at this map, I see the asterisk, it says, go consult this ordinance. Okay, fine, I'll go consult the ordinance. Oh, now I'm on notice. At least then you're giving people constructive notice. They did everything that they could to hide this ordinance, it seems, from not publishing it all the way through not putting it on the map, or at least any indication on the map that there's something coming here for 31 years, and that's our biggest problem. I guess what I'm trying to get my arms around is if you've got a conditional zoning of any kind, and some conditions take a while. They may require you to, you know, I gave an example, which may have been simplistic of, you know, you get a rezoning so you can build a sanitary ditch, or I don't know, and you need to get approval. And that approval could take a while. It could take two years to build and get approval. And let's say there was no contract zoning. None of the things you're complaining about, about the access to the water lines and the sewage lines in Section 4. Forget about Section 4 of our ordinance. Okay. Let's just say it said, okay, HARTS, you can rezone this, and, you know, whenever you decide to do, or let's change it, though. Let's say there's a condition that takes some time. It's not landowner take all the time you want, but this rezoning won't take place until this condition is satisfied, which is the EPA signs off on your sanitary ditch. At what point in time has a decision been made such that you have 90 days to challenge it? Is it when it first passed, or is it when the EPA said, okay, when did the decision to rezone start the 90-day clock? That is an excellent question, Justice. I'm glad you asked that. I think it depends on whether or not the condition sends anything back to the village to do. So if, in your example, it's simply waiting for an EPA approval. And once the EPA approval is done and the village receives notice that, hey, look, the EPA has approved this, okay, then the village will go ahead and issue permits, work will start commencing. I think in that scenario, that 90 days would have ran from the date of the decision that said you're good to go pending your approval from the EPA. If, however, the approval in the ordinance said you're good to go once you get approval from the EPA, and then you come back to us, and we have to then approve your plans. If anything, or if they said anything, if the EPA changes anything in your plans, you've got to come back to us for additional approval. Then the approval is not final because the village still has something to do. And that's exactly what happened in this case, I think, is that they could have worded it a whole lot differently in their ordinance. They could have said that this zoning will take effect upon just a request by the property owner for permits consistent with the rezoning to R4 and D1. They didn't do that. They actually worded it such that there needed to be an application for rezoning, which those words by themselves indicate you have to go publish, you have to do all the things that, you know, an application for rezoning is not a little thing. It is the essence of the publication requirements. I'm sorry? Okay. So the village, I understand what you're saying. I mean, you see words like application for rezoning, notice, and you start thinking of the municipal code provision for going through amendments, which starts with an application for an amendment. I understand that. So the village would say, the village did say in a supplemental brief that when it came back to the village that the board had no discretion whether to approve or reject. It was not given any criteria, and that's because it had no discretion. It simply had to stamp it. Do you agree that that was what the ordinance said? I do not. Because they used the words application for rezoning, that would incorporate all of the village's power when it comes to considering an application for rezoning. And that's where I go back to that they could have written in 1988, instead of that you need to submit to us an application for rezoning, that you need to submit to us plans for redevelopment. You need to submit to us a simple notice that we're moving forward at this point. By calling it an application for rezoning in 1988, they were leaving open all of that encompasses all of the rules and regulations and notice requirements that are involved in rezoning. I understand what the village is saying, but if that's what they wanted to have happen or that's what they think happened, the language is incorrect. It isn't simply just a here's, we're ready to go, this is perfunctory. Because it wouldn't have needed to be given to the Board of Trustees either. It would have just gone to the village, the correct person at the village who handles building codes. But if that's true, Council, and obviously that's something we're looking hard at, we tried to focus on those words in the supplemental briefing order. I understand everything you just said, that it seems to be invoking the process anew. But if that's true, then why put in the language at all to begin with? Then all that language in Section 2 that talks about rezoned as follows, that 6.2 part, I mean, I went through this whole language, which, I mean, you're a property lawyer, you know better than we do, that's rezoning, right? And then they said, but only if you come back to us and ask and we decide to say yes? I mean, if that's the interpretation, then why put the zoning language in at all? Why pass the ordinance at all? So, Your Honor, you have hit on something that isn't readily apparent on the surface of this, but is when you understand the context of how this thing happened. Glenview and Northbrook are two adjoining villages, and I don't know if you're familiar with the North Shore at all, but they adjoin each other. Northbrook to the north, Glenview to the south. In 1988, they were fighting over this particular piece of property. Northbrook attempted to involuntarily annex it to Glenview. Mr. Hart and his wife ran, or they tried to involuntarily annex it to Northbrook. Mr. Hart and his wife ran to Glenview and sought a voluntary annexation to Glenview. They would have rather been in Glenview than Northbrook. There was a race at that point, and I believe even litigation at that point, over this particular attempt to annex the property. So what ends up happening is that the Glenview has, the Harts demanded that Glenview provide them with some assurances that if they wanted to rezone this property commercially in the future, that they would be allowed to do so. And this convoluted ordinance is a result of that rushed attempt to appease the Harts, annex the property into Glenview on a voluntary basis from them, but yet appears to that the village trustees left a door open for them to go back and reexamine whatever was submitted at that time and whether they wanted to complete the rezoning or not. I read that in the language that they used. So we have to read statutes as they are written. This one is very poorly written, obviously. I don't think anyone disagrees with that. But as written, using the terms application for rezoning, using the terms notice and application given by the title holder, and having the conditions that it does, at the very least, it becomes an unconstitutionally vague ordinance. I should say unconstitutionally vague ordinance. At best, it requires additional information to interpret. But that context, I understand Your Honor's looking at this without that context and going, why do all this stuff? Why put all this Part A in? The first two sections don't make any sense. And that's the reason why. That context where two villages are rushing to get this one piece of property, and that's really what happened, and that's why it looks the way it does right now. I don't think I have any further questions. Thank you, Mr. Appell. Appreciate it. Thank you, Justice Ellis. Thank you, Justice. Justice Copps, do you have a question? Thank you, Justice House. Thank you, Mr. Appell. Justice Ellis has asked a substantial number of questions, and I appreciate that because he's really opened the door or given us a lot more illumination on the issues. But are you suggesting, Mr. Appell, then that 2856, based on all of the history that you just shared with us, was really a stopgap measure to kind of like say to the other village, well, we've got this covered, and here's the rezoning ordinance that makes it so? I hate to use the word. Well, I won't use the word. This was a measure that enticed the hearts to come to Glenview. So it was a negotiation at that point, and that's why it's contract zoning, because one party was offering to come to Glenview and provide the property to the village of Glenview. The other party, being Glenview, was saying, well, if you do that, we'll give you what you want when it comes to potentially future zoning of this property as commercial so that it will be more valuable to your heirs. That's essentially what happened, and that's, you know, you look at the case law and contract zoning, and this is exactly, Justice Copps, what they're trying to avoid. They don't want these special sweetheart deals given outside of the normal zoning process and the normal zoning ordinances. But that's what happened in this case, and yes, it was a rush. Both villages going after the same piece of property, and it's, as a result of, you know, when we rush our legal work, sometimes we get really bad work, and that's kind of what happened with this ordinance. What should we make of those additional concessions in the alleged rezoning ordinance with respect to that last portion, which gives a hard certain accessibility to the property, the special driveway? What should we, is that anything that we would typically find in a rezoning ordinance? I don't believe so. I believe that is exactly the type of contract zoning that Flossmoor case, that, you know, you cannot give those special considerations in these kind of situations. If the zoning doesn't include these things or, you know, normal zoning doesn't provide for certain things, you cannot require those or provide those. Now we're getting off into the contract zoning area, which is, you know, for lack of a better word, foreboding in zoning law. So, yeah, we have an issue with all of that. That gets into count two of our complaint. Unfortunately, the entire complaint was dismissed as the circuit court thought that it was time barred, but that is under Flossmoor. You know, another avenue to void this ordinance out of NISIO is the contract zoning element of it. I understand. Is there anything that is peculiar or unique to the application that was filed by GW? Is it the typical application that you would see in any applicant's request to seek rezoning? Is there anything unique about that? I cannot honestly answer that because I do not have personal knowledge of other applications of a similar kind. I do know that the village's own brochures require even, I think, two or three forms of proof of ownership that must be submitted with an application. So you have to prove that you are the owner of the property and the owner must submit the application, at least according to their own paperwork. So I do not know if a contractor submitting in this manner is normal or abnormal for the village of Glenview. My experience is that typically, and it's not with Glenview but in other villages, that the owner has to submit for permits for zoning reapplication. The owner is the one who has to do the submissions. There's always a contractor sort of helping and going along with that, but the owner is the one who has to actually submit those things to the village. And their signatures are usually required on these types of things. And then my final question, what with respect to Glenview's response to this particular application, what was the nature of the response? Was there a response at all or was it simply file stamped by the clerk who received it? I think you're right. It was file stamped by the clerk that received it. They say that they informed the board that they received it at their next board meeting in June of 2019. And then from there, we do know, again, off the official record, that it sort of bounced around the committees who are looking at the plans. And they were going back and forth about what was going to go in there and where the trees were going to be. And eventually, they sort of deleted the buffer zone housing and just made it a drainage ditch. So there were things that were happening in between that time and the January approval. It wasn't just going from, you know, here's our plan submission, and then they approved it. It was going back and forth between various committees of the village board and commissions that they have set up who were looking at that. Thank you. I have nothing else, Justice Holmes. Thank you, Mr. Appell. Thank you. Mr. Appell, if we accept that 2856 is not a body of law that changes zoning itself, when exactly did the zoning change? The record that I'm looking at, your complaint says that something happened on May 24th of 2019, which, you know, they said zoning was changed. And there's some question about the landowners or how it got done. If we assume and accept that, and even accept that you were not given proper notice of that change, does the 90-day limitation apply? I mean, do you have any cases that say your right to file declaratory judgment trumps the limitation in the statute specifically? Excellent question, Justice House. Here's the thing with when was the zoning change actually made. That is one of the primary questions on that supplemental briefing that we did. I honestly believe it actually hasn't happened yet because the conditions set forth in 2856 have not yet been satisfied. In that, the village has never received an application from the property owner. It was never given to or accepted by the village board. Those three facts tell us they didn't comply with Ordinance 2856 at all. So how can we say that there was a completion of the zoning change if none of the factors that the village set up in that ordinance were actually completed? That's why I say that the earliest they could have done anything was January of 2020 when they met and they approved the construction plans. But they never actually explicitly accepted an application, nor was there ever an application made by the title holder. At any point in time, and still to this day. So if anything, we challenged the ordinance before it was final. And so we could not possibly be late. Whether we're early or not, I think we're in the process in a declaratory judgment situation of saying to the court, we need your help. We need you to declare that what the village did back in 1988 is completely void because there's no jurisdiction. But we have not yet started the 90-day clock running on any decision made by the village because they haven't finally made a decision. Now, of course, the 90-day clock, we contend, doesn't apply because of jurisdictional challenges being not a decision that would be subject to 25A. But even if it was, ask the village, when did the title owner actually make an application? When was it accepted by the village? Board. Not the village ministerial workers, but by the board itself. And the board can only act in open meetings. There is no ability for the board to meet in secret, well, we think, to accept the application. They have to do it in a board meeting, and none of the minutes reflect that. So they never actually accepted the application. Well, even hypothetically, if you say the clock ran on May 24, 2019, do you have a case which states that the limitation period does not apply to a declaration action saying that due process rights are violated? So this wouldn't be a case of first impression for that. So no. What we do have is a case law that existed prior to the 2006 enactment of 25A, and that case law says that jurisdiction is mandatory and the notice is mandatory and jurisdictional, and that a village has no power to enact any zoning without jurisdiction. Then it comes along 2006, the legislature reacting to a Supreme Court case in which the legislative intent indicates what they wanted to do was to protect due process rights and basically enact de novo review and codify that. So the Supreme Court said, when a village acts in a quasi-judicial manner in making a decision, that the review of that decision should be de novo. And the legislature said, great idea, let's codify that. And so they did, and nowhere in the legislative history did they discuss this 90-day statute of limitations, but it's in there. So somebody puts in a 90-day statute of limitations on decisions. Now, we know that they could have said decisions or jurisdictional challenges because they did that in annexation law, and they did it earlier. So they had the knowledge, they had the wherewithal to say, if they wanted to, you cannot challenge zoning amendments for jurisdictional reasons after a certain period of time. And they could have done that, but they didn't. So having the knowledge from the prior annexation law and then not applying it in this case indicates that they didn't intend to limit, and the use of the word decision, I should say, let me throw that in there, they didn't intend to limit jurisdictional challenges. So is there a case? No. Your honors would be the first ones to do so, but there isn't a case that says jurisdictional challenges are subject to the 90-day statute of limitations. The village will probably point to CBS versus Itasca or the CBS versus Plainfield case, but neither of those dealt with jurisdictional challenges at all. In fact, in those cases, notice was not an issue. Notice, publication, not an issue. So I think we get back to sort of the basic point is that if you don't provide published notice, you might as well be holding a meeting in the basement of someone's friend's house because it doesn't mean anything. Nothing you're doing in that meeting without published notice means anything at all. It's all void from the get-go. Thank you. I have no further questions. Justice Ellis, Justice Cobbs, any questions right now? Can I just ask one further question, Justice House? Mr. Appell, this background you just gave us about Northbrook and Glenview fighting over this piece of land obviously was not in your complaint and obviously is not in the record below. Is there anything of which this court could take judicial notice that would reflect that there was anything going on between these two towns fighting over this parcel of land that you're aware of? I don't have it in my fingertips, Judge, but I do believe there's an appellate opinion that had to do with this particular property. I don't want to say that for sure because we delved into this early on in our investigation of the case and we saw that case. It didn't really have a bearing on our particular matter. But I think that if your honors find a case shortly after 1988 between the village of Glenview and the village of Northbrook that it deals with this particular issue. There was an intense fight at that time over the annexation of this property. Actually, my associate just sent me the link for that. I think it's 194. I'm sorry. 194. 560 in the 1989 case so that the court could take judicial notice of the facts of that case. Okay. All right. Thank you. Thank you, Justice. Thank you. Mr. Asproth, we've allotted 10 minutes. We gave the other side an extra three or four minutes. If you need to stretch it, you may. You may proceed. Thank you, Your Honor. Good morning, Justices. Counsel, may it please the court. Kurt Asproth on behalf of the village of Glenview. Your Honor, this case revolves around actions that occurred in 1988. The village board of trustees voted to approve Ordinance 2856 in 1988. Plaintiffs challenged whether a notice of publication on the public hearing for the proposed rezoning of the Hart property was published in February of 1988, even though they attached a certificate of publication showing that it was published to their complaint. The decision to rezone the Hart property was made in March of 1988 when Ordinance 2856 was adopted. Despite the fact that there might have been some additional conditions that had to be satisfied for the title owner or their, you know, designee to take advantage of that rezoning, the rezoning decision was made in 1988 when the village board adopted Ordinance 2856. And it's that date, the date of the decision, there was no further decision to be made by the board after that ordinance was adopted. It's that date, the date of the decision that matters for purposes of the statute of limitations. Because Section 111325 is clear that any challenge to a zoning ordinance, including a rezoning ordinance such as Ordinance 2856, has to be brought within 90 days of the date of the decision. So whether or not or when the actual zoning ordinance or the provisions allowing the property to be developed under the R4 or the B1 regulations came into effect, the date that matters for statute of limitations is when the decision to rezone was made. And that decision was made in 1988. There was no further decision for the board to make. Even so, we do believe that all the conditions were satisfied. The property owner submitted an application to rezone. It was accepted by the board. They had the owner's authorization, and they were allowed to proceed through the process. But again, we don't believe that's really the relevant issue here. The sole issue on appeal right now is whether or not the statute of limitations bars plaintiff's claims. And for that purpose, the date that matters is the date of the decision. And the case law is clear that any claim, any claim challenging that decision of a municipality to rezone property or to adopt a special use or any other zoning approval, has to be brought within 90 days, including claims challenging procedural due process, such as a claim alleging defective notice. The scope of that statute of limitations has been squarely addressed by the second district in the case of CBS versus Itasca. Now, in CBS, Itasca adopted a special use ordinance and an amendment to a planned unit development. And as part of that approval, they required that a billboard on the property be removed. CBS, the billboard advertiser, filed suit. They claimed that the village lacked the authority to require the billboard to be removed. They claimed that the village's actions was ultra-buyers, that it violated state statutes, and that it violated their constitutional rights. CBS brought these claims outside of that 90-day window, but they argued that their claims weren't subject to that 90-day limitations period. They claimed that there was a difference between claims challenging the wisdom of a zoning ordinance or whether a zoning ordinance was good or bad, and claims challenging whether or not a zoning ordinance was otherwise illegal or violated state statutes, or that the village lacked the authority to adopt that zoning ordinance in the first place. That was what they argued. The second district squarely rejected that argument. The court held that Section 111325 does not differentiate between claims challenging the wisdom of a municipality's decision to adopt a zoning ordinance, and claims challenging whether or not the municipality lacked the authority to adopt that zoning ordinance. The court pointed to the language in 111325. They said the language there that says any review challenging a zoning ordinance has to be brought within 90 days, that has to mean all reviews, all reviews. And so the court held that those claims, even though they were alleging that the village lacked the authority to include the removal provision, that the village's actions were ultra-buyers, that it violated their constitutional rights and state law rights, that those claims were still covered by the 90-day statute limitation. And here, there's really no difference between the claims plaintiffs have brought and the claims that were brought by CBS and dismissed by the court in CBS v. Itasca. Like the plaintiffs in CBS v. Itasca, plaintiffs here alleged that the village lacked the authority to adopt Ordinance 2856. They alleged that we lacked the authority because the notice was allegedly deficient. Like the plaintiffs in CBS v. Itasca, plaintiffs alleged that the village violated state statutes when they adopted Ordinance 2856. They alleged that the village violated 1113.14 by not failing to publish notice. Just like the plaintiffs in CBS v. Itasca, plaintiffs claim that there has to be a separation between claims challenging the wisdom of a zoning ordinance, or as counsel put it, whether the zoning ordinance is good or bad, and those claims challenging whether or not the actions of the village in adopting that ordinance were otherwise illegal. That's exactly what the CBS v. Itasca court rejected. Any review of a zoning ordinance includes all workings, including claims alleging procedural due process violations, such as those brought by the plaintiffs here. A defective notice is within the confines of procedural due process, and they have discussed it as well. They admit their claims are a procedural due process claim. Those claims, including procedural due process substantive claims or substantive due process claims, are covered by the 90-day statute of limitations. CBS v. Itasca controls here. Plaintiffs aren't able to point to any other case holding that claims alleging defective notice or jurisdictional defects are exempt from this 90-day limitations period, and they admit this would be a matter of first impression. It's not. CBS v. Itasca has already squarely addressed this issue, and plaintiffs can't point to any other case law, any other statute that supports that position, that just because they're alleging a notice was defective, that somehow their claims can be brought in perpetuity, that no statute of limitations applies. That's clearly not what the legislature intended when they adopted 11-1325. Even under any method of statutory interpretation here, the 90-day limitations period has to apply to plaintiffs' claims. Again, the legislature said any challenge, any review of a municipality zoning decision, and again, the decision here was in 1988. There was no additional decision to be made. The property was rezoned in 1988 by Ordinance 2856. It had to be brought within 90 days. If they wanted to exclude jurisdictional claims, they could have done so. They easily could have excluded those, yet they did not do so. Plaintiffs are basically asking this court to craft a legislative exception to 11-1325 through judicial proceeding. That's something that really is left up to the legislature here, because the legislature clearly said any review of a zoning ordinance is subject to this 90-day limitations period. Again, even looking at the statute as a whole or reading it in power materia, it's clear that procedural due process claims have to be within the confines of that 90-day limitations period. The legislature said that any claim has to be brought within 90 days, and in the very next sentence in Section B, they say that the principles of procedural and substantive due process apply to all zoning decisions. So it wouldn't make sense for the legislature to include that language, but then exempt these same procedural due process claims from the 90-day limitations period that they imposed in that very same section. The purpose of the 11-1325 is really to clarify how and when zoning challenges are brought. They're only brought as challenges legislative decisions under de novo review for whether or not they violate due process, either procedural due process or substantive due process. And both of those claims are subject to the 90-day limitations period. Further, a second plaintiff's argument would really defeat the purpose of the statute of limitations here. Statute of limitations are aimed to prevent stale claims being brought where memories have faded, evidence may have been lost, witnesses are hard to find. That's exactly the case here, as there was difficulty trying to figure out what classifieds were published by the Chicago Tribune back in February of 1988. There's really just no reason that any zoning ordinance now could be challenged in perpetuity based on simply an allegation that a newspaper notice was not published. Any zoning ordinance statewide would now be open to challenge in perpetuity based on a procedural due process violation. That's clearly not what the legislature intended when they adopted 11-1325. Plaintiff's argument also begs the question of what additional claims might not be subject to the 90-day limitations period. What if somebody alleges that the public hearing itself violated due process, that they were denied cross-examination? Are those claims also not going to be subject to that 90-day limitations period? The legislature adopted 11-1325 to clarify how and when these claims were brought. Trying to exempt a procedural due process claim based on defective notice clearly isn't in accord with what the legislature intended. I will just also note that the circuit court held that even if the discovery rule applies in this case, plaintiff's claims were brought too late. We do not believe that the discovery rule should apply in any zoning challenge. The public is on constructive notice of zoning ordinances. I know plaintiffs have made several allegations that the Ordinance 2856 was a stealth ordinance, that it was adopted in the dark of night, and that this was hidden from the public. First, that's clearly not accurate, as plaintiffs attached the minutes of the public hearing on Ordinance 2856 from both the Planning Commission and the Village Board meeting, showing that all these neighbors showed up, they expressed their opinion, there was a full public hearing. Some of them even complained about notice, but nobody filed suit back then. Village Board adopted Ordinance 2856 at a public meeting. After that, it became a public record. Plaintiffs had ready access to it for 32 years after that. They could have submitted a FOIA request for any ordinances impacting the heart property, and they would have received Ordinance 2856. The case of Rokey v. Hernandez confirms that the public is on constructive notice of zoning ordinances. So the discovery rule doesn't really apply in a zoning context, because the public has nothing to discover. They're already on constructive notice when a zoning ordinance is adopted. So we don't believe the discovery rule applies here. Even if it does, we agree with the Circuit Court that plaintiffs waited too long. Plaintiffs admit they waited 60 or 180 days after they discovered their claims to file a suit. There's no reason they should be allowed an additional twice as long as any other plaintiff to bring their lawsuit. Everybody else has 90 days to file a suit to challenge a zoning decision. There's no reason plaintiffs should be allowed an additional 90 days just because they discovered their claims late. And this issue was actually addressed by the court in CVS v. Plainfield by the Northern District, where that court held that 90 days was a reasonable amount of time. We agree. Even if the discovery rule applies, plaintiffs had 90 days. They brought suits six months later. So clearly we think that their claims are time-barred. We ask this court to affirm the Circuit Court's ruling that their claims are time-barred. Thank you, Your Honors. I look forward to your questions. Thank you. Justice Ellis, do you have any questions? Yes, I do, Justice House. Thank you, Mr. Aspruth. I guess it's good afternoon now. Yes. And thank you for your presentation. Have you ever seen a zoning ordinance remotely like this one before? Your Honor, conditioning zoning ordinances are very common, where there are certain additional future events that have to occur before they can come into effect. I would say one of the most common that I see is approval of final engineering or approval of IDOT or, as Your Honor brought up, approval of the EPA. So a PUD will be granted, or a special use will be granted, or a rezoning will be granted, but the provisions of that ordinance can't be taken advantage of by the property owner until something occurs at a later date, such as they get final engineering approval, or they receive a change in a floodplain map that allows them to develop the property, or IDOT signs off on the traffic program. So that's very common, where there's additional conditions that have to be satisfied before the approvals in a zoning ordinance can actually be utilized. And in those zoning ordinances that you're talking about, do those ordinances say, come back to the Village Board of Trustees, reapply for zoning, and we have to accept it? Generally, no. Sometimes they'll say that it has to be approved by the community development director, or sometimes it does say it just has to be approved by the Village Board, but there's not really a point where they say you have to come back and go through the whole zoning process again. That would defeat the purpose of adopting the zoning ordinance in the first place. And again, the plaintiff's reading of Ordinance 2856 to say that we had to go through the whole rezoning process again when they applied in 2019, that would make Ordinance 2856 a nullity. It would be meaningless. It would have no impact whatsoever because they would still have to go through the whole rezoning process again and adopt a new rezoning ordinance. Clearly, that's not what the Village Board intended. So you are aware of ordinances that put conditions such as IDOT approval or EPA approval that say you have to come back to the Village Board to accept an application, you have to reapply for rezoning, and the board has to accept it. You've seen those? Not specific to those terms, Justice Ellis, no. But I don't believe that the language in Ordinance 2856 requiring an application for rezoning really meant that they had to go through the whole rezoning process again. But, Counsel, whether they had to go through the whole rezoning process again or not, this ordinance says it goes through the rigmarole of listing out all the rezoning, and I questioned your opposing counsel on this, too. It seems like there's some reason for doing that, I grant you. I mean, why put that in if it wasn't going to have some force? And yet, as we go down through Section 2 and Section 3, it very clearly says more than once, more than once, there has to be an application for rezoning that has to be accepted. And there has to be notice. So as odd as it may seem, after going through the trouble of listing out the language of the rezoning, isn't there some reason to look at that later language and say, ah, there's got to be another application for rezoning? Not just show up and give notice to the Community Director of Development, the Director of Community Development, not just some signed letter, but literally another application for rezoning with notice that has to be approved or accepted by the Board. Don't those words just register pretty much every bell and whistle of the municipal code for zoning applications? In a strict sense, yes, Your Honor. However, it says that the notice in the application has to be given to the Board of Trustees. So it's not that this notice has to be given to the adjoining property owners. That notice has to be published in the newspaper again. This wasn't meant to be a whole new zoning procedure. It was just meant to say that when the title holders did decide to take advantage of the rezoning that had already been approved, they just had to let the village know, and the village had to make sure that all those conditions had been met. It was kind of preposterous, again. I'm sorry to interrupt you, but you keep saying the village, and you kept doing that in your supplemental brief, too. You kept substituting in the village. The village accepted it. They gave notice to the village. The provisions of the ordinance say the Board of Trustees. Now, did they file this application for rezoning with the Board of Trustees? No, Your Honor. I believe it was filed with the Community Development Department. Right, which is what the Glenview Municipal Code says should happen. Did they give notice to the Board of Trustees? The Board was notified of the application and the process of rezoning through a Board update that we attached to our supplemental brief. Okay, that's that weekly Glenview update or whatever? Yes, Your Honor. Okay, and who, I mean, I have to tell you, Counsel, I read that, and that looked to me like a newsletter I get in my little village where I live, which is not Glenview. This was in a, like, okay, it's on Village of Glenview Stationary. It says Village Update Week of June 3rd to 7th, 2019. This looks like a summary of everything that's happening in Glenview. You're saying this was prepared for the Village Board of Trustees? Yes, it was sent to the Village Board of Trustees. It's a weekly update they received. Okay, what I'm asking you, was it only sent to them, or is this something that's sent to everybody who lives in Glenview? I don't believe it's sent to everybody that lives in Glenview. I believe it was sent to the Board and maybe other staff. I don't know exactly who all it was sent to, but I don't believe it's distributed outside of maybe a Board packet or on the website. I don't believe it's mailed to the Village as a whole. Okay, and there's a discussion on one of these pages. I think it's page, it's not paginated, but you talk about the heart property. And in here it says, it's one paragraph on the heart property, kind of buried right in the middle of a bunch of other stuff. It says that the property's already been rezoned. The way that we read Ordinance 2856, it did not require any specific action from the Village Board of Trustees. It did not require another ordinance to be passed. It did not require a resolution to be passed. It was simply a perfunctory matter that had to be accepted to make sure that they checked all the boxes. But did it require notice to the Board of Trustees? And we believe that they did receive notice, yes. In this newsletter? Yes. This newsletter said it's already been rezoned. Yes, because that was the way that the staff interpreted the ordinance. But, Your Honor, even so, these were local requirements that were imposed under Ordinance 2856. These weren't mandatory statutory obligations that we were having to comply with. The Board decided that they'd rezone the property and then put these additional conditions that had to be satisfied. These were local requirements. They were not mandated by state statute or otherwise by constitutional principles here. So even if Ordinance 2856 did mandate some specific action by the Village Board, as a home and municipality, the village can't be bound by its own locally imposed requirements. Or, and Ordinance 2856 and the village's subsequent actions can't be invalidated simply because of a failure to, alleged failure to comply with its own locally imposed requirements under Ordinance 2856. Counsel, the ordinance says that rezoning is not effective. It does not take effect by the terms of the ordinance you passed until there's notice, an application to the Board of Trustees, and that application is accepted. Are you now saying those conditions don't have to be met? Your Honor, we do believe they are met. But we do say, we do argue in our supplemental brief that since these are locally imposed requirements, as a home and municipality, they can't, the failure of the village to potentially follow any of those requirements can't invalidate any of the village's actions. However, we do believe those conditions were met. Even though the application was submitted to the Community Development Department, it was still submitted to the village as a whole. Okay, but I keep coming back to the fact that you said these, this rezoning would not take effect until these things happen. If you're now saying that as a home rule unit, you get to blow those things off, then when did the rezoning take effect? No, Your Honor, we're not saying that we have to blow those things off, not at all. I think you are. I think you're saying you didn't have to satisfy those. If you didn't have to satisfy those, then when did they take, when did this rezoning take effect? What is the date? What is the thing that happened that made them take effect? We don't believe there was any formal action required by the Board of Trustees for the rezoning ordinance to take effect. So when the application for the rezoning was submitted, and the time had passed, that was all that really needed to happen for the rezoning to take effect. So we believe it happened on May 24th of 2019. Okay, so that was before there was notice. We believe the application to the Village's Community Development Department would be the notice. Do you think the word notice in the ordinance applies to the Board of Trustees or notice more generally? Your Honor, I think it probably applies to notice more generally. I think this was just meant to say that when they are going to develop under the R4 and V1 zoning districts, that they notify the Village so that we can confirm that either the five years has passed or that one of the hearts has passed away. What I meant, though, was does notice mean notice? I mean, it says notice an application to the Board of Trustees. So the application goes to the Board of Trustees, but does the notice have to go to the Board of Trustees, or do they mean notice more in the sense of notice to the public? I think that only meant notice to the Village and the Village Board of Trustees. Again, if they meant notice to the public, that would be essentially saying that they had to redo the whole rezoning at a later date when they did want to actually take advantage of it. And that would make Ordinance 2856 basically superfluous. There would be no reason to have enacted it in the first place. Because the public hearing was conducted, the notice and the public hearing were already conducted in 1988, and the decision to rezone was made in 1988. So it wouldn't make sense to have another requirement that a whole new rezoning has to be approved at a later date because there would be no reason to even enact Ordinance 1988 at that time. So the people who live around the Hart property in Glenview read this ordinance, and it says that there's going to be notice. And you're saying that the way they should have understood that was whenever it gets filed, that gets noticed. So notice and application are really the same thing twice. In our opinion, yes, Your Honor. Because the adjoining property owners in Glenview around the Hart property received a notice and the opportunity to be heard in 1988 on the rezoning. There was no reason to have additional notice to them down the road when the rezoning had already been approved and decided in 1988. Are you aware of any ordinance like this that has given the option to the property owner to initiate rezoning whenever they feel like it, even if it's 30 or 100 years later? Not specific to these same terms, Your Honor. But in a manner, it's really no different than just rezoning the property directly. Because say the property was rezoned in 1988 and there were no additional conditions imposed. The Harts were allowed to continue operating a single-family residence on that property as a legal nonconformity for as long as they decided. And then once they did decide to develop, they would already have the zoning in place, and they could develop under the R4 and the B1. So there's really no substantive difference between having the rezoning take effect when the property owner decides to take effect, and just having the rezoning take effect now and allowing them to take advantage of it whenever they decide. I would submit there is an enormous difference. And that difference is that the zoning map would change. I mean, if the rezoning took effect in 1988, the zoning map would change, I guess, in March of 88 or probably 89. I don't know how you were doing your zoning maps back in the 80s. But at some point, not long after that zoning ordinance took effect, everybody would know that it had been rezoned. Whereas if the property owner gets the rezoning and chooses not to act on it and engages in what you call a legal nonconformity, so be it. The landowner apparently can do that. They don't have to comply with the B1 zoning. But at least everybody who lives there will know that it's B1. Your Honor, the Ordinance 2856 was a public record. So any neighbor had ready access to it after its adoption from 1988 on. So there was no concealment here of what the property's entitlements were. That was a public record that could have been accessed by any neighbor at any time. Okay. And I'll just ask you one more time. I'm taking a lot of time here. Why bring it back to the Board of Trustees? And why require an application for rezoning all over again? As opposed to any other way, you could have required just the ministerial task of just filing a piece of paper with the clerk. Your Honor, I can't speak to exactly why it was the Board of Trustees. We think it may be just to ensure that the Board of Trustees is obviously the corporate authorities of the municipality. They're the ultimate governing board. So maybe the intent in saying Board of Trustees was just the village as a whole. The village is governed by the village as an entity itself. So we don't believe specifically saying that it had to come back to the Village Board of Trustees has any significance to mean that a new rezoning had to occur when that application is filed. Again, because we think that would make Ordinance 2856 essentially meaningless. Because it would not rezone anything and the whole process had to happen again. Okay. And I lied. I have one more question. So back to the notice. You showed us this weekly update. It's your position that a letter that was mailed to individual trustees is the same thing as giving notice to the body as a whole? Yes, Your Honor. Ordinance 2856 didn't require any specific type of notice. So it didn't have to be through a formal agenda. No formal action had to be taken. So Ordinance 2856 didn't mandate any specific type of notice. Have you ever heard of a situation as a lawyer who I think you represent a lot of villages and municipalities. Have you ever heard of the concept of notice applying in that way to a legislative body? That you just mail the individual trustees and that means the body as a whole has been given notice? I guess I've never really seen a situation like this, Your Honor, where there has been a requirement of notice like this to the Board of Trustees. But it's very common for boards to be updated through weekly updates like this where they receive notice of the ongoing events in the village and things that are happening through a weekly update. Notice in a non-official way, sure. There's nothing wrong with keeping your legislators informed about the goings on. But that's no kind of legal notice I've ever heard of. Have you? No. But, Your Honor, we don't believe that this required a legal notice. Ordinance 2856 didn't say that notice didn't have to be provided through publication or through a formal letter that had to be acknowledged by the board at a public meeting. There was no requirement like that in Ordinance 2856. Okay. Thank you very much. Thank you, Your Honor. Thank you, Justice Ellis. Justice Copps? So, just a couple things, and they may be redundant. I apologize in advance for that. Mr. Asper, thank you so very much. But I'm just stuck on this notice and application piece. So, if someone were to file an application, that wouldn't affect the notice, wouldn't it? You wouldn't have to do two things, would you? That's the way that we view the rezoning application. The zoning application gave the village notice that they were going to develop under the R4 and the B1. Accepting your position, why would there need to be a full-fledged application if the rezoning had already occurred? Why wouldn't it simply stop at notice to the board as opposed to notice and application? Because you're not requiring the board to take any more action. So, why would they need to submit another application if, in fact, all they needed to do was give notice? Your Honor, I think the reason for that is to confirm that the conditions had been satisfied, either that the five years had passed or that one of the hearts had passed away. So, that was basically just to make sure that the title holder didn't try and take advantage of the R4 and the B1 zoning prior to either of those two conditions being satisfied first. Couldn't that simply have been managed by giving the notice as opposed to now completing a full-fledged application? An application implies to me and maybe to most that there are certain fields in the application that must be or are required to be completed and that having completed those fields, then there will be some review of those fields to make certain that there is some conformance or compliance. But if all that needed to be done was to give notice or to say, hey, board, someone passed away or it's been five years since and we're ready to go, why would they have to file an application? Just send them a note and say, you know, one of the two conditions has now occurred. I don't see the utility in the application. Your Honor, we think that just, again, is just meaning that the application to rezone was filed in 1988. So, that application has already been taken care of. The decision to rezone was made in 1988. This is just a perfunctory notice and application to say the conditions have been satisfied. We would like to have the rezoning officially shown on the map and develop under those provisions. So, we don't believe that the rezoning application meant a full new rezoning application. Because, again, then Ordinance 2856 would have been meaningless. Why would the village board have required a whole new process or a whole new application if they already had one in front of them that they had decided to approve? But let's look at it from a protective standpoint or a protective measure for the board. What if, in fact, they did intend to have an application for rezoning that they then would either accept based on a review? Wouldn't that have been a protective measure for the board to say, okay, when one of the two conditions occurs and you're ready to go, then reapply. And if we accept it, as it says upon acceptance, if we accept it, then we will rezone. Couldn't we look at it as kind of like a protective measure for the board, another opportunity for them to come back and revisit the issue? Yes, Your Honor, you can. But generally when zoning ordinances do that or they say that something has to be brought back for approval, they provide a set of standards about why and how it has to be approved. Or other things that have to be met or discretionary standards that have to be reviewed on it, such as if this was a new rezoning application, the board would have to review it for the LaSalle factors and principles of substantive due process. That's not what the board did here. This was really just to say, has that five-year passed or has somebody passed away, and then at that point the rezoning will take effect. Because, again, that decision to rezone was already made in 1988. That application had already been submitted. That application had already been approved. The public hearing had already been held. So there was really no reason for them to say, let's hold another hearing down the road when they already held a hearing in 1988. Except that there might have been changes in the past 30 years that might have required the board to give reconsideration to its approval. And you would admit that in 30 years, a lot could change. A lot could happen. Including the board changing its mind about the rezoning. Certainly. Certainly, Your Honor. And I will say from a perspective of, even if there, to get maybe to the heart of this matter, even if there was a requirement that the board take some additional formal action to allow the rezoning to take effect, it doesn't matter for purposes of the statute of limitations. Because the decision on the rezoning, the decision was still made in 1988. So even if there was some additional requirement that the board pass a resolution saying that these factors had been satisfied, that's not the decision on the rezoning. The decision on the rezoning was made in 88. When they held the public hearing, they published notice, even though there's a dispute about the notice. And the board adopted ordinance 2856. So even if there was some additional review required by the village board, it doesn't change the fact that for the purposes of the statute of limitations, the rezoning decision was made in 1988. Let me ask you the purpose of making an indicator or an indication of rezoning on the maps. What is the purpose of doing that? So when there's rezoning in your village or in Glenview, every March there is an indication on the maps as to whatever properties or fossils have been rezoned. What is the purpose of doing that? Certainly so the public can see what properties are zoned in what districts. But you would admit, I mean, we all agree that there was nothing on the map to indicate that there was this ordinance that was passed in 1988. Nothing to even cite to the particular ordinance. Nothing to suggest that the ordinance was pending. Nothing to indicate to anybody in the public as this additional method or means by which we give notice that the property had been in fact rezoned. Yes, Your Honor. The map did not reflect any additional rezoning for the Hart property. However, I will note again that ordinance 2856 was a public record. The public had access to it. Anybody could have determined, pulled that ordinance through a simple FOIA request and reviewed it to see what the Hart properties zoning entitlements were. So even though the map might not have had it on there, ordinance 2856 was a public record that could have been accessed by anyone else. And then one final question, and it is with respect to the concessions that were made for the Harts with respect to the special uses. I know that's a term of art and I don't mean it in that way, but the ordinance when it speaks to their access to driveways and water access. If we assume that everything else in the ordinance is in order, would the ordinance fail for what Mr. Appel describes as contract zoning? No. No. A, I think first off that it would clearly be barred by the section limitations because that's a substantive challenge to the ordinance. And then two, contract zoning per se is not invalid. So even if there was some elements of contract, that still has to be analyzed under the substance and due process factors in the LaSalle case. So it's not per se invalid. And even so, there is no contract zoning in ordinance 2856. The village set forth several conditions and I guess concessions, if you will, that allow the property to be developed in a certain manner. But the Harts didn't give anything in return. There was no consideration. There wasn't a give and take that showed a contract here. It was this is the rezoning, here's how it's going to work. The Harts didn't have to do anything to basically in exchange for the rezoning. There wasn't this contractual give and take that has invalidated other ordinances for contract zoning. So we don't believe that even if these claims were timely, that there would be any contract zoning violation here. Except now that Mr. Appel has pointed us to some litigation that might be disclosed or might be revealed in 194LF3rd. So what are we to make of those concessions? And I haven't read the case. I admit to that. But what are we to make of those concessions with respect to what we might find in that particular case that Mr. Appel now cites us to? I think we have to look to the plain language of Ordinance 2856. There's nothing in Ordinance 2856 that says that there's a contract here. I mean, it simply says here's how the property can be developed and here are the rights. There's no give and take between the Hart property owners and the village under Ordinance 2856. Thank you, Mr. Atkins. I have nothing else, Justice House. Thank you. Counsel, getting back to a question that Justice Cobbs touched upon, when we understand that a clerk could not just accept this application and then the zoning has been changed, that application had to be forwarded to someone, and they had to vote to either follow the 1988 decision or not to follow. Isn't this a case where the 1988 village trustees passed legislation intending to bind a future zoning board decision? You would have conceded they had the authority not to follow it, right? There may have been litigation, but they had the authority to say, no, we're not going to do the zoning. I don't think they could back out on the actual rezoning of the Hart property. That's an entitlement that the Hart property owners had a vested right to. Well, whether they could prevail in the lawsuit or not, they actually had the authority and all say unanimously, we disagree with what happened in 1988 and we're not going to follow it. And they could vote to say no. Absolutely, Your Honor. They could conduct another public hearing to rezone the Hart property and repeal Ordinance 2856 to put it back to the R1. So the board always has the ability to change the zoning ordinance and the zoning map. They just have to follow the statutory procedures to do so. And those statutory procedures were completed in 1988 here. But when they agreed to follow what happened in 1988, they actually did change the zoning. They said, we're going to do what they told us to do in 1988 and we're going to vote to change that. Isn't that what happened here? No, the village board did not take a vote to approve that. And we don't think there was any required village board vote to approve the rezoning because that vote was already taken in 1988. Well, why did it have to go back to the village authorities? I mean... Your Honor, we see that as just confirmation that the two additional conditions there have been satisfied. You had the legal authority to say, we're not going to follow it. Therefore, a decision was made. I don't believe they could violate those provisions without litigation. But if they were going to try and revoke the zoning or revoke the provisions of Ordinance 2856, then they would have to go through a new zoning process. But that's not what they did. The zoning process was already completed in 1988. And they were bound by what happened in 1988? Yes. I have nothing further. Justice Ellis, Justice Cox? All right. Mr. Pell, you have the floor, short rebuttal. I do, Justice. Thank you very much. One thing I would like to address is what we didn't hear. We didn't hear an answer to why the village's position would allow a village to conduct a secret meeting without properly published notice and then spring it on an unsuspecting public 91 days later with the public not being able to do a thing about it. They refuse to acknowledge that there's a fundamental difference between subject matter jurisdiction that is achieved through proper notice and other challenges to a decision, which is what the legislature wrote in Section 25A. They don't want to acknowledge that jurisdiction is fundamental, that it is a part of due process, and that it's necessary to have any kind of a decision going forward. Now, the cases cited by counsel, CBS versus Itasca, that one is easily distinguished because there Itasca had achieved jurisdiction through proper notice. There was no claim that they failed to publish proper notice. Itasca, relating back to my earlier analogy, built its foundation on stone. And whether or not they allowed the four-car garage, which in that case was tearing down a billboard where they should have only allowed a three-car garage, was something that CBS was required to challenge within the 90 days. Subject matter jurisdiction was not an issue there. In CBS versus Plainfield, there was no issue of a failure to publish either. Instead, CBS or its predecessors simply didn't pay attention to the ordinances affecting their interests. They were a third party. They were not an adjacent landowner. Also, Plainfield there conceded that if its notice by publication didn't satisfy due process requirements, the discovery rule, which was an issue there, would toll the running of the statute of limitations on their claims. And in fact, later on in that case, because that sentence was dealing with 1983 claims, but later on they dealt with 25A claims. And the court there in dicta, not a holding as counsel just indicated, in dicta, stated that it could be 90 days, but left it for the court to decide. And even if it was a holding, it wouldn't be precedential being that it is a federal court case. Obviously, we're all struggling with this, when was the decision made? And I think your Honor's questions on that are 100% accurate. We cannot say that the decision was made in 1988 because the ordinance itself leaves open a change in decision or a further application for rezoning. And the village, for all of its faults in this case, is really going to have to be faulted by writing a very bad ordinance. And their own language is what's going to come back to haunt them in that that leaves open exactly what we're talking about here, which is that there has not been a final rezoning yet because they didn't do the things that they were supposed to do. And their argument that we don't have to follow our own ordinance doesn't change the fact that for timing purposes, we can consider what they were supposed, we still have to decide when they, if ever, accepted the application for rezoning. And what does that application for rezoning mean? And I don't think that that argument that they don't have to follow their own zoning ordinances means that they can just do whatever they want, just declare things that occurred that didn't actually occur. Now, the argument about constructive notice was raised for the first time on appeal. It's waived. There is case law that says that, and the case is Pasolino v. City of Zion, that due process does require a plaintiff be apprised of dependency of the zoning map amendment and afforded the opportunity to present their objection. As your honors have noted, if they would have made the change in 1988, at least it would have been noted on the map, or at least if they would have notified everybody who looked at the map that there was an issue here that needed to be looked at further, there might have been some constructive notice. But the way that the village went about it, and its failure to publish notice in the newspaper as required, left us with that secret meeting scenario that has yet to be answered. As I told you right at the beginning, there is no answer, and that's why you haven't heard one from council. Just because some people did have notice and went to the meeting doesn't mean that notice was achieved. For whatever reason, there were people at that meeting, but they still failed to publish notice. As for the 90-day, we talked about the discovery rule and whether 90 days would be an appropriate amount of time. We have to remember that in a normal scenario where somebody is going to challenge a zoning ordinance, they typically have way more than the time after the decision to be notified that something is going to happen. There is notice in the newspaper. There may be notice posted at the property. They may receive additional notice. And this is all happening prior to even the first consideration of an application. So when you look at the totality of how long a person today receiving notice in a newspaper that their adjacent property might be rezoned has to examine an issue, investigate it, understand what issues are involved and what basis they may have to challenge something, they have way longer than 90 days. So that 90 days doesn't start running until the decision is made. And so a reasonable amount of time in this case, and we actually only had 120 days from the May date, which is not even a real date in our opinion, but what is a reasonable amount of time? The court never looked at that. The court completely ignored what might have been a reasonable amount of time. What were the plaintiffs doing during that time? They were investigating whether or not there was actually published notice. They were looking at a lot of different things. They were talking to the village about whether or not they had public notice. They were issuing FOIA requests. They were being very diligent, but still that takes time. And Rule 137 requires that they investigate their claims before making them. So in sum, I just want to conclude by saying that we know that statutory notice is jurisdictional, and we know that where a village has failed to provide statutory notice, it has absolutely no jurisdiction to enact any zoning changes. The cases cited by the village are not applicable. They don't deal with subject matter jurisdiction in relation to lack of notification, lack of public notice. And so this is an issue of first impression, and the court will need to decide whether or not the scenario I laid out with the secret meetings is something that has been answered and has been satisfactorily answered by the defendants. I don't think it has. So all we ask at this point is that the court remind Glenview that it did not have jurisdiction, or if it didn't have jurisdiction, that's not saved by the statute of limitations, and that the judgment of the circuit court be reversed, and the matter remanded back to them for further proceedings. Thank you, Your Honors. Justice Ellis, Justice Cobbs, any additional questions? No. Okay. Well, thank you both. The case was very well argued and well briefed. We will take this case under advisement, and the decision will be entered in due course. Thank you so much.